UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| BARRY M.,<br>　　　Plaintiff,<br><br>　　　v.<br><br>FRANK BISIGNANO,<br>Commissioner of the Social Security<br>Administration,<br>　　　Defendant. | :<br>:<br>:<br>:　C.A. No. 24-294PAS<br>:<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On January 17, 2023, Plaintiff Barry M., a "younger" individual, filed his third application for Supplemental Security Income ("SSI") under the Social Security Act, alleging onset of disability as of October 1, 2022. Plaintiff has a GED and a significant criminal history for assault and drug-related charges; he is prescribed suboxone to manage addictive disorder. Tr. 40, 46, 56, 255, 261-263. Plaintiff has worked at many different jobs for relatively short periods. Tr. 45, 193-208. The hearing before the administrative law judge ("ALJ") reflects that his jobs generally ended either because he was fired or because he quit to avoid a personal conflict that might land him in jail. Tr. 36. For four to five months beginning in January 2023 (during the period of alleged disability), Plaintiff worked for a temporary agency and was placed in manual labor jobs at various construction sites. Tr. 41-42. The ALJ determined that this was an "unsuccessful work attempt." Tr. 19.

It is undisputed that Plaintiff has the severe mental impairments of opioid dependence, generalized anxiety disorder, intermittent explosive disorder, post-traumatic stress disorder, depressive disorder, and emotional dysregulation disorder. Tr. 19. Plaintiff has not challenged the ALJ's determination that, when analyzed without consideration of the additional impairing

impact of physical symptoms, these impairments are not disabling in that Plaintiff retains the mental RFC[1] to sustain work.  Rather, this appeal is focused on Plaintiff's alleged physical impairments.  Plaintiff claims that he has produced sufficient substantial evidence to support the finding that he has low back pain (spondylolisthesis and herniated disc) and left leg paresthesia, which are medically determinable impairments ("MDI") that are severe for Step Two purposes, despite the lack of current diagnostic or treatment records to support these findings.  Two non-examining physicians considered Plaintiff's evidence but found it insufficient to make MDI findings regarding these impairments because of the lack of MRI or other documentation.[2]  Noting Plaintiff's "minimal treatment" for these conditions, his 2023 unsuccessful work attempt, and two provider observations of normal strength and gait, the ALJ made the Step Two finding that these physical conditions "are non-severe impairments."  Tr. 20.  For the RFC finding, the ALJ ignored potential work-limiting impact of Plaintiff's back/leg symptoms and found Plaintiff able to "perform a full range of work at all exertional levels" with no postural limitations.  Tr. 21-22.  Based on these findings, the ALJ found Plaintiff not disabled at any relevant time.

Plaintiff contends that the ALJ's determination terminating consideration of these physical impairments at Step Two is error requiring remand for further proceedings; he has filed a motion asking the Court to so order.  ECF No. 10.  Defendant has filed a counter motion for an order affirming the Commissioner's decision.  ECF No. 12.  Both motions are before me on consent pursuant to 28 U.S.C. § 636(c).

I.      **Standard of Review**

---

[1] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 416.945(a)(1).

[2] Both of the non-examining physician experts entered a finding of IE ("insufficient evidence").  Tr. 69 (due to lack of imaging and Plaintiff's failure to provide "Work History or ADL forms despite outreach by DDS staff," "somatic determination is IE"); Tr. 76 (same; "No current MER . . . I/E").

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 1383(c)(3); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding. Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in Biestek, 587 U.S. at 103). Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam). The determination of substantiality is based upon an evaluation of the record as a whole. Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam); Lizotte v. Sec'y of Health & Hum. Servs., 654 F.2d 127, 128 (1st Cir. 1981). The

Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015). If the evidence of disability is "overwhelming" and there is no contrary evidence to rebut it, the Court may order remand for an award of benefits. Audrey P. v. Saul, C.A. No. 20-92MSM, 2021 WL 76751, at *13 (D.R.I. Jan. 8, 2021), adopted, 2021 WL 309233 (D.R.I. Jan. 29, 2021).

**II.     Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.605. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §§ 416.905-11.

**A.     The Five-Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 416.920(a). First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. Id. § 416.920(a)(4)(i). Second, if a claimant does not have any impairment or

combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. Id. § 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. Id. § 416.920.(a)(4)(iii). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. Id. § 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. Id. § 416.920(a)(4)(v). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 143-44 (D. Mass. 2003) (five-step process applies to SSI claims).

    **B.**    **Step Two Determination**

An impairment is "not severe" at Step Two if the medical evidence establishes no more than a slight abnormality that would have only a minimal effect on an individual's ability to work. SSR 85-28 at *2, 1985 WL 56856 (Jan. 1, 1985); Michael H. B. v. Berryhill, C.A. No. 17-530 WES, 2018 WL 4178255, at *2–3 (D.R.I. Aug. 6, 2018), adopted, 2018 WL 4146599 (D.R.I. Aug. 30, 2018). As the First Circuit has long held, Step Two is a screening device used to eliminate applicants "whose impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986). Determining Step Two severity is a two-step process: first, the ALJ must determine whether there is an MDI; and second, if there is an MDI, the ALJ must determine its severity, both for the Step Two severity finding and for consideration of the resulting symptoms in establishing the claimant's RFC. LaRose v.

O'Malley, Civil Action No. 23-cv-11963-ADB, 2024 WL 4932517, at *10-11 (D. Mass. Dec. 2, 2024).

If there is error at Step Two, but the sequential analysis continues because of another severe impairment, the error is generally deemed harmless. White v. Colvin, No. C.A. 14-171S, 2015 WL 5012614, at *8 (D.R.I. Aug. 21, 2015); see Syms v. Astrue, Civil No. 10-cv-499-JD, 2011 WL 4017870, at *1 (D.N.H. Sept. 8, 2011) ("[A]n error at Step Two will result in reversible error only if the ALJ concluded the decision at Step Two, finding no severe impairment.") (collecting cases). Thus, as long as the ALJ's RFC analysis is performed in reliance on the opinions of state agency reviewing experts or treating sources who considered the functional impact of the impairment in question, there is no material error in failing to include it as a severe impairment at Step Two. Evans v. Astrue, No. C.A. 11-146 S, 2012 WL 4482366, at *4-6 (D.R.I. Aug. 23, 2012) (no error in ignoring diagnosis of antisocial personality disorder at Step Two where ALJ relied on medical expert's testimony regarding resulting limitations), adopted, 2012 WL 4482354 (D.R.I. Sept. 26, 2012). However, if an ALJ's continuation of the analysis is limited, for example, to a claimant's severe *mental* impairments and the ALJ does not consider the symptoms of a physical condition (for example, back and rib injury/pain), a Step Two error regarding the physical impairments is not remedied merely by continuing the sequential analysis as to the mental impairments. LaRose, 2024 WL 4932517, at *11. At Step Two, the claimant has the burden to show that he has an MDI that significantly limits his ability to do basic work activity at the relevant time. Ramos v. Barnhart, 60 F. App'x. 334, 335 (1st Cir. 2003) (per curiam).

    C.    **ALJ's Duty to Develop the Record**

"Social Security proceedings are inquisitorial rather than adversarial [and thus] . . . [i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." Sims v. Apfel, 530 U.S. 103, 110-11 (2000); see Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991) (social security proceedings are not adversarial in nature). The ALJ's duty to develop the record and resolve ambiguities is enhanced when the claimant suffers from a psychiatric impairment. Leutung v. Comm'r of Soc. Sec., 17-cv-6626-JWF, 2019 WL 1385847, at *2 (W.D.N.Y. Mar. 27, 2019). It is also heightened when the lack of evidence may be linked to claimant's failure to procure recommended treatment due to mental illness or indigency – "additional diligence is often warranted when the claimant suffers from alleged mental disability . . . [and] . . . [i]t is incumbent upon the Commissioner to ensure that the records upon which benefits decisions are made are fully developed and that individuals with psychological problems are not given short shrift." Torres-Pagan v. Berryhill, 899 F.3d 54, 60 (1st Cir. 2018); see Miguel S. v. O'Malley, Case No. 23-cv-1943-MMA (DDL), 2024 WL 5184292, at *5 (S.D. Cal. Dec. 20, 2024) (where claimant's seeming "inability to cooperate with medical exam may be due to the very disability for which [claimant] is seeking benefits," "there is sufficient ambiguity in [claimant]'s medical records to trigger the ALJ's duty to further develop the record with respect to Plaintiff's mental impairments"), adopted, 2024 WL 5184292 (S.D. Cal. Dec. 20, 2024); LaRose, 2024 WL 4932517, at *8-15 (when claimant with severe mental impairment "was scheduled to undergo an MRI, but declined due to anxiety," ALJ's duty to develop record of back/rib impairment is triggered and appeals council error in declining to consider new evidence is egregious); A.Y.V. v. Saul, Case No. 5:19-cv-01582-SHK, 2020 WL 2787623, at *7 (C.D. Cal. May 29, 2020) (ALJ's rejection of claimant's "symptom statements due to conservative

7

treatment fails because . . . ALJ failed to consider the extensive evidence in the record of [claimant's] indigency and her resulting inability to afford more treatment").

The duty to develop the record applies at Step Two to the determination whether an impairment amounts to an MDI. Id. at *9-10 & n.10 (discussing ALJ's duty to develop record by sending individual to consultative examination for diagnostic testing or procuring testimony from medical expert to determine whether impairment constitutes MDI). Thus, when a claimant produces "ample evidence" that he may have a physical impairment that significantly interferes with the ability to do basic work activities, and additional testing is required to make that determination, but the objective evidence is insufficient at Step Two to ascertain whether the impairment constitutes an MDI or to assess its severity, the Court should remand the matter with an order for the ALJ to develop the record. Dorothy C. v. Kijakazi, No. 21-cv-1278, 2022 WL 2440040, at *2-3 (N.D. Ill. July 5, 2022) (remand to allow ALJ to develop record "more fully and make additional findings based on . . . more robust evidence" where claimant presented "ample evidence" that she may have "mental disability that significantly interferes with her ability to do basic work activities, and additional testing is required to make that determination").

When there is error at Step Two because of the ALJ's failure to develop the record regarding whether an impairment is an MDI and the severity of the symptoms it causes, that error also taints the RFC determination. Thus, on remand to reconsider Step Two severity based on an expanded record, the ALJ should also be required to retool the RFC finding based on the expanded record, whether or not the Step Two impairments are found to be severe. Ortiz v. Dudek,, No. 24-cv-11704-ADB, 2025 WL 1400356, at *25 (D. Mass. May 14, 2025); see LaRose, 2024 WL 4932517, at *11 ("ALJ is required to consider an MDI at step four of the sequential analysis regardless of whether the impairment is deemed 'severe'" at Step Two).

8

### III. <u>Substantial Evidence of Physical Impairments</u>

The evidence of Plaintiff's physical impairments – low back pain (spondylolisthesis and herniated disc) and left leg paresthesia – is well described in Plaintiff's memorandum in support of his motion to remand. For starters, the mental health consulting examiner from Plaintiff's prior applications noted:

> Extended medical history was significant for a left knee surgery for torn ligament during his adolescence and chronic low back pain caused by 'heavyweight training' . . . result[ing] in a bulging disc in L-3, L-4 and L-5 region. At present, he continues to complain of chronic low back pain.

Tr. 255 (2013 report); see Tr. 261 (2015 report). While the Commissioner is correct that this is not a diagnosis (which this psychologist was not qualified to make) and the notes are potentially stale (applicable to a period ending in 2015), when linked to the more recent evidence, these references amount to substantial evidence that these impairments once existed and may have persisted. Consistent with these references is the April 2022 (just prior to the commencement of the period in issue) entry on Plaintiff's treating internist's "Active Problem[s]" list: "Disc disorder of lumbosacral region." Tr. 268. Similarly, in June 2022 (four months before the alleged onset-of-disability date), Plaintiff's primary care physician diagnosed "low back pain" radiating to legs and impacting ability to do weightlifting; she noted, "pt reports h/o severe herniated disc." Tr. 516-21.

The most dramatic evidence comes from a December 16-17, 2022 (in the period of alleged disability) encounter at a hospital where Plaintiff sought emergency room treatment for what he described as a "leg problem." Tr. 282-85 (leg has numbness, reduced sensation, "indented bruise," increased hamstring pain, swelling, discoloration, worse with walking, better with sitting). Despite examination observations of normal strength and gait, Tr. 302-04 (as the ALJ noted, Tr. 20), medical findings coupled with Plaintiff's history of "lower back

spondylosis," Tr. 283, caused providers to diagnose "pain in left leg" "paresthesia of skin" and "low back pain," and to treat the circumstance as medically serious, urging Plaintiff to "follow up with PCP and spine specialist <u>ASAP</u>." Tr. 292, 296 (emphasis added); see Tr. 298 ("call the spine specialist . . . office to schedule appointment for follow-up <u>as soon as possible</u>) (emphasis added); Tr. 304, 330 (patient urged "to follow up with PCP and neurologist <u>ASAP</u>") (emphasis added). This emergency room record also includes the following: "Telemetry neuro consult . . . <u>suspect this is due to lumbar radiculopathy</u> given patient's history . . . . Recommend follow-up with PCP and/or Ortho for further evaluation possible MRI lumbar spine." Tr. 321 (emphasis added). Relatedly, in January 2023, Plaintiff's social worker noted "Pt is a welder by trade but has difficulty holding a job due to back pain." Tr. 470. Consistently, in June 2023, Plaintiff's primary care physician noted, "Pt c/o ["complains of"] L leg/foot numbness, tingling, weakness, heart palpitation" in connection with an episode of near unconsciousness possibly related to "smoking THC [and] "nonstop Vaping nicotine." Tr. 677.

Plaintiff's testimony supplements the medical evidence. Thus, he testified that, because of his back:

> It's tough to do, like, heavy, strenuous stuff. It can be a little tough for me. Bending at the waist can be very tough for me. I don't sleep right. And then, I wake up in the morning – you know, I just happened to sleep the wrong way. It'll be extremely painful. I get extremely painful lower back -- like, shooting pain. And it'll go down to, like, my legs being numb.

Tr. 55-56. Regarding medication for these symptoms, Plaintiff stated, "I do take anti-inflammatories. They won't prescribe me anything besides that. I'm on opiate maintenance drugs I don't want." Tr. 56. Indeed, the ALJ acknowledged that Plaintiff had clearly stated that his unsuccessful work attempt during the period of disability was "getting tough to – on your back." Tr. 55; see Tr. 42 (regarding his work attempt, Plaintiff testified: "It was extremely

10

strenuous on my back, to be honest with you. It's pretty tough for me to move like that, day in and day out. It was manual labor, construction"). Further, Plaintiff explained his inability to continue with the 2023 unsuccessful work attempt: "I noticed when strenuous things going on my life, it gets extremely hard for me to focus. And it got a little bit tough for me." Tr 43.

Also important is the substantial evidence ignored by the ALJ that Plaintiff's mental impairments and indigency/homelessness seriously impacted his capacity to follow up on medical treatment, particularly the urgent recommendations ("ASAP"), Tr. 330, made by various providers at the hospital emergency department that the presenting symptoms and medical history of back and leg issues called for immediate diagnostic examination by a spine specialist, orthopedist and/or neurologist. Further, the treating records reveals that Plaintiff's case manager repeatedly noted that Plaintiff was told in June 2022 to get an MRI and given referrals to follow up yet failed to do so. And there is no evidence that the case manager actually responded to the emergency room providers' imperative for prompt follow up. E.g., Tr. 459, 461; see Tr. 465 (primary care physician notes need for referral for follow up regarding low back pain, but plan is that "he will let us know if he needs referral and to what place"). Relatedly, the record is replete with evidence of Plaintiff's homelessness, failures to appear at appointments and failure to respond to case management (e.g., Tr. 461, 485, 488, 489), as well as at least one instance of leaving a hospital against medical advice due to a disagreement about medication (Tr. 675). The treating record also includes the notation that, "in the last 12 months," Plaintiff's health has been impacted by his inability to buy medication and/or see a doctor, and/or that he has gone without healthcare due to costs and transportation issues. Tr. 521.

**IV.     Analysis**

The Court has reviewed the foregoing substantial evidence, with focus on the evidence that the ALJ marshaled for his Step Two determination to ignore Plaintiff's physical symptoms – minimal treatment of those symptoms, the 2023 unsuccessful work attempt and physical examination findings of normal strength and gait. Based on that review, the Court finds that the substantial evidence that the ALJ relied on is not such as a reasonable mind might accept as adequate to support the conclusion that Plaintiff's back and leg symptoms would have no work-limiting impact. The Court further finds that Plaintiff has sustained his Step Two burden of producing substantial evidence sufficient to permit the inference that, but for his psychiatrically-based/indigency-based failure to follow up on medical recommendations to procure diagnostic assessments and (potentially) treatment for his back/leg symptoms, there could be sufficient evidence to support a Step Two finding that his low back pain (spondylolisthesis and herniated disc) and left leg paresthesia constitute MDIs, that they may be severe for Step Two purposes, but in any event that they may cause work-limiting symptoms that should have been incorporated into the RFC. Thus, the Court finds that the ALJ committed legal error, as in LaRose, in conflating the legal standards and analysis regarding MDI and Step Two severity and essentially failing to make any MDI findings. LaRose, 2024 WL 4932517, at *11. The Court also finds that the ALJ erred by failing to do anything to fill the evidentiary gap exposed by the non-examining physicians' IE findings.[3] The Court further finds that the ALJ's failure to make an MDI finding, coupled with his failure to develop this record as described in SSR 16-3, 2017 WL 5180304, at *3-4 (Oct. 25, 2017), is error requiring remand to develop the record, and for further proceedings

---

[3] This is not a case where the ALJ relied on non-examining sources who assessed the functional impact of Plaintiff's physical impairments. Rather, these experts declined to make such findings because of IE – insufficient evidence. Thus, their findings amount to substantial evidence that there may be an MDI, but that the record needs to be developed to make that determination.

at Step Two (both MDI and severity) and at the RFC phase in light of the more developed record. LaRose, 2024 WL 4932517, at *12, 14-15, 20.[4]

Importantly, the Court does not find that Plaintiff is disabled, and it is far from clear whether he may be found to be disabled when a fully developed record is considered. Nor did the ALJ consider the possibility that Plaintiff may be disabled but not eligible for benefits because of the contributing impact of ongoing use of controlled substances. James C. v. O'Malley, C.A. No. 24-002MSM, 2024 WL 5039339, at *3 (D.R.I. Dec. 9, 2024) (if substance abuse is material contributing factor to disability, benefit may not be awarded), adopted, 2025 WL 33542 (D.R.I. Jan. 6, 2025). Nevertheless, those determinations can be made only if Plaintiff's limitations are identified through proper application of the law to substantial evidence in a full record developed consistent with the remedial nature of the Social Security Act. Karissa B. v. O'Malley, 733 F. Supp. 3d 57, 60 (D.R.I. 2024). The Court's remand order is for the purpose of requiring the Commissioner to complete that task.

## V.   Conclusion

Based on the foregoing, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) is GRANTED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 12) is DENIED. The matter is remanded for further proceedings to develop the record of Plaintiff's back/leg impairments as reflected in the medical record and to make further Step-Two and RFC findings that take the new evidence into consideration. The Clerk is directed to enter judgment in favor of Plaintiff.

---

[4] The Court notes that Plaintiff's motion appears to ask in the alternative for remand for an award of benefits. Courts generally exercise the power to award benefits only when it is clear from the record that the claimant is entitled to benefits. Sacilowski, 959 F.3d at 437. Such a finding must be based on the reality that remand for further proceedings is unnecessary because the evidence of disability is "overwhelming" and there is no contrary evidence to rebut it. Audrey P., 2021 WL 76751, at *13. This is a case based on mixed and inclusive medical evidence; it is far from being one where an award of benefits would be appropriate. To the extent that Plaintiff seeks such a remedy, his motion is denied.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 8, 2025